IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICKY HILL, )<br>)<br>      Plaintiff, )<br>)<br>v. )<br>)<br>AMB SPORTS & ENTERTAINMENT, LLC )<br>(d/b/a Atlanta United FC); INTER MIAMI CF, )<br>LLC; LAS VEGAS SOCCER LLC (d/b/a Las )<br>Vegas Lights FC); MAJOR LEAGUE SOCCER, )<br>LLC; MEMPHIS 901 FC LLC; PRODIGAL )<br>SOCCER, LLC (d/b/a OKC Energy FC); TEPPER )<br>SPORTS & ENTERTAINMENT (d/b/a Charlotte )<br>FC); UNITED SOCCER LEAGUES, LLC, )<br>)<br>      Defendants. ) | Case No. 1:22-cv-02961 |

**REPLY IN SUPPORT OF MOTION TO DISMISS**

Defendant Prodigal Soccer, LLC ("Prodigal") respectfully submits the following points of law in reply to Plaintiff's Response in Opposition to Defendants' Respective Motions to Dismiss and/or Transfer [Doc. No. 74].

    **1.**     **PLAINTIFF CANNOT DEMONSTRATE PERSONAL JURISDICTION.**

    **A.**     **General Jurisdiction.** Plaintiff's Response first attempts to show that Illinois has personal jurisdiction over Defendant Prodigal because he claims Defendant Prodigal has "continuous and systematic" contacts with Illinois. In support, Plaintiff points solely to the following: (i) the United States Soccer Federation ("USSF") is based in Illinois and Defendant Prodigal is associated with Defendant Major League Soccer, LLC and/or Defendant United Soccer Leagues, LLC, with respect to whom Plaintiff claims this Court has personal jurisdiction; (ii) Defendant Prodigal maintains a generally-available website that sells merchandise and lists job

postings; and (iii) a Wikipedia entry states that Defendant Prodigal once employed a player who was born in Illinois.[1] None of these demonstrate the existence of general personal jurisdiction.

With respect to any connection that Plaintiff alleges to exist between Defendant Prodigal and USSF, Defendant Major League Soccer, LLC, and/or Defendant United Soccer Leagues, LLC, federal courts have repeatedly recognized that a professional sports team's occasional interactions with a particular state as part of the team's national athletic activities does not establish "continuous and systematic" contacts with that state. *See*, *e.g.*, *Senne v. Kan. City Royals Baseball Corp.*, 105 F.Supp.3d 981, 1017-18 (N.D. Cal. 2015) (collecting cases and concluding that it is only appropriate to consider the contacts with a forum state of a team itself and not to "aggregate the contacts of the teams with those of the sports associations of which they were members"), *see also Magee v. BSN Sports, LLC*, 2022 WL 3701627 at *4 (N.D. Tex. Aug. 8, 2022) (same). Accordingly, whether this Court has general jurisdiction over Defendant Prodigal must be evaluated with respect to Defendant Prodigal alone.

With respect to Defendant Prodigal's website, it is universally recognized that a generally available website does not give rise to personal jurisdiction in a particular state. *See Tamburo v. Dworkin*, 601 F.3d 693, 701-02 (7th Cir. 2010) ("Nor is the maintenance of a public Internet website sufficient, without more, to establish general jurisdiction."), *see also Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 143 (4th Cir. 2020) (no general personal jurisdiction when a website is "accessible to all but targeted at no one in particular"). Note that Plaintiff has not shown that Defendant Prodigal's website has given rise to any contacts between Defendant Prodigal and Illinois; Plaintiff has only suggested the possibility that it might.

---

[1] These are the only facts alleged against Defendant Prodigal specifically.

With respect to Plaintiff's claim that Defendant Prodigal recruited an Illinois player once, Plaintiff has not bothered to check his allegation for accuracy. The Wikipedia page cited by Plaintiff (attached hereto as Exhibit 1) states that player Eric Leonard was born in Illinois but that he then played soccer for Butler University from 2014 to 2017, after which he played for the OKC Energy team for one year in 2017, and then for other teams since then. Federal courts have recognized the unreliability of Wikipedia articles as evidence of anything. *See United States v. Lawson*, 677 F.3d 629, 650-51 (4th Cir. 2012) (collecting cases and observing that "we are not the first federal court to be troubled with Wikipedia's lack of reliability"). It is impossible to establish general jurisdiction premised on hiring an employee who was <u>born</u> in a particular state and it is frivolous for Plaintiff even to suggest otherwise.

Considering the foregoing, the facts Plaintiff presents are inadequate to establish this Court has general jurisdiction over Defendant Prodigal.

**B.    Specific Jurisdiction.** Plaintiff next attempts to argue for the existence of specific jurisdiction based on the notion that the Illinois long-arm statute provides that there is always jurisdiction in Illinois for a tort committed in Illinois. There are two problems with Plaintiff's argument. First, no matter what the long-arm statute provides, this Court must still comport with constitutional principles of due process in exercising personal jurisdiction. *See, e.g.*, *Wiles v. Morita Iron Works Co.*, 125 Ill.2d 144, 149, 530 N.E.2d 1382, 1384-85 (1988) (holding that jurisdiction predicated on the Illinois long-arm statute "must comport with the principles of due process"). Second, Title VII is clear that, with few exceptions that do not apply here, an act of employment discrimination occurs in the jurisdiction where the employer is located. *See, e.g.*, *Davis v. Pierce*, 2007 WL 9814709 at *6 (N.D. Ill. May 10, 2007) ("In the specific employment

discrimination context . . . courts must look not to the site of the injury, but to the location of where the decisions and actions regarding the employment practices took place").

It is telling that Plaintiff puts most of his eggs in the general jurisdiction basket (to no avail, as discussed above), demonstrating a seeming recognition that he lacks the facts needed to establish specific personal jurisdiction over Defendant Prodigal.

**C.     Jurisdictional Discovery Is Not Warranted.**  First and foremost, Plaintiff has failed to move for jurisdictional discovery despite having been given the opportunity to do so.  In re *Honey Transshipping Litig.*, 87 F.Supp.3d 855, 874 (N.D. Ill. 2015) (a party may not bury a request for jurisdictional discover in a response brief rather than presented it "properly as a motion").  Further, no such discovery is warranted.  It is clear Plaintiff is grasping at straws to show the existence of personal jurisdiction when he should not have filed his lawsuit against Defendant Prodigal in this Court in the first place unless he believed he had a legal and factual basis for alleging personal jurisdiction.

As the cases cited above demonstrate, particularly the *Senne* (baseball) case, federal courts do not recognize personal jurisdiction over a professional sports team in a state with respect to which the team (i) lacks sufficient "systematic and continuous" contacts and (ii) did not engage in the acts giving rise to a plaintiff's claim.  No amount of discovery is going to change the fact that Defendant Prodigal is based entirely in Oklahoma, is wholly owned by Oklahoma ownership, does no business and owns no property in Illinois, is not involved in sporting events in Illinois, and has no employees in Illinois.  *See* Doc. No. 19-1 (affidavit of Jeff Kretchmar, Chief Operating Officer of Defendant Prodigal).

### 2. PLAINTIFF HAS FAILED TO SHOW HIS COMPLAINT STATES A TITLE VII CLAIM.

Plaintiff's Response clarifies that he is not attempting to establish liability against Defendant Prodigal for events occurring in 2019. He states, however, that reference to such events may be necessary to establish a "pattern and practice" of discrimination. But Plaintiff has not alleged a "pattern and practice" claim. Rather, his claim is grounded solely and entirely in Defendant Prodigal's alleged decision in 2021 not to hire him because of his race. Thus, Defendant Prodigal respectfully requests that this Court enter an order clarifying that any Title VII claim premised on events occurring prior to 2021 cannot be asserted against Defendant Prodigal.

### CONCLUSION

Defendant Prodigal respectfully requests that this Court grant its Motion to Dismiss [Doc. No. 19] in its entirety. To the extent Defendant Prodigal has not addressed a particular point or argument made in Plaintiff's Response [Doc. No. 74], it is relying on the arguments already presented in its Motion to Dismiss and in no way is waiving its objection to any such point(s) or argument(s).

Respectfully submitted,

*/s/ Michael A. Furlong*
Michael A. Furlong
Oklahoma Bar No. 31063
STEPTOE & JOHNSON PLLC
101 South Park, Suite 1300
Oklahoma City, Oklahoma 73071
O: (405) 850-5369
michael.furlong@steptoe-johnson.com
***Counsel for Defendant***
***Prodigal Soccer, LLC***

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing pleading was served by electronic mail through the Court's ECF system on counsel for all parties on November 21, 2022.

*/s/ Michael A. Furlong*
Michael A. Furlong