IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICKY HILL, | ) |
|     Plaintiff, | ) No. 22-cv-2961 |
| v. | ) Judge Jorge L. Alonso |
| AMB SPORTS & ENTERTAINMENT, LLC, *et. al.*, | ) |
|     Defendants. | ) |

## Memorandum Opinion and Order

Plaintiff Ricky Hill filed this lawsuit against Defendants for alleged race-based discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.*, the Illinois Human Rights Act, 775 ILCS 5/101 *et seq.*, and the Civil Rights Act of 1866, 42 U.S.C. §1981. Each Defendant has filed a motion to dismiss based on various grounds. For the reasons below, the Court grants Defendants' motions [19] [38] [46] [48] [50] [54] [61] [64].

## Background

The Court takes the following facts from the complaint. Hill, who is Black, is an internationally acclaimed soccer player and coach of men's professional soccer teams. Most of the Defendants own various professional soccer teams in the United States. Two Defendants—Major League Soccer, LLC ("MLS") and United Soccer Leagues, LLC ("USL")—are men's professional soccer leagues to which the other Defendants belong. During the last several years, Hill reached out to these teams regarding the possibility of employment but was never hired for any positions. Hill claims that he was not hired because of Defendants' race-based discriminatory practices.

## I. AMB Sports & Entertainment, LLC

Hill alleges that Defendant AMB Sports & Entertainment, LLC ("Atlanta United") owns the professional men's soccer team known as Atlanta United FC. Atlanta United is a Georgia based limited liability company with its principal place of business located in Marietta, Georgia. Atlanta United is a member of MLS.

In late 2014, Hill reached out to Darren Eales, then-president of Atlanta United. Hill expressed an interest in employment with Atlanta United. Hill met with Eales in Atlanta, Georgia, in March 2015. In April 2015, Atlanta United announced the hiring of Carlos Bocanegra for the position of Technical Director.

In March 2021, Atlanta United's head coach left. Hill's representative, Kieren Keane, reached out to Eales by phone and left a voicemail expressing interest in the vacant head coaching position. He also sent a text requesting a time to discuss the position. On May 19, 2021, Hill was interviewed via Zoom by Bocanegra, Felipe Villahoz (Operations Coordinator, Vice President, and Technical Director's Office), and Johnathon Spector (Head of International Recruitment and Development). On May 28, 2021, Bocanegra called Hill and told him that Atlanta United would be promoting Jack Collison to the head coaching position. Bocanegra further explained that Matt Lawrey would be promoted to the Academy Director position for Atlanta United. Both Collison and Lawrey are white and were working for Atlanta United at the time of their promotions.

## II. Inter Miami FC

Hill alleges that Defendant Inter Miami CF, LLC ("Inter Miami") owns the men's professional team known as Inter Miami FC. Inter Miami was formed in Delaware and has its principal place of business in Miami, Florida. Inter Miami FC is a member of the MLS.

2

On November 7, 2019, Hill expressed an interest in applying for a position with Inter Miami, messaging his friend David Gardner, who was close friends with Inter Miami's owner. Gardner told Hill that he had passed along his details to Inter Miami's Sporting Director and COO, but Hill never received any response.

On April 19, 2021, Keane reached out on behalf of Hill to Inter Miami's new Chief Soccer Office and Sporting Director, Chris Henderson, regarding the recently vacated position of Academy Director. Henderson advised Keane to reach out to Mark Prizant, the Director of Scouting at Inter Miami, which Keane did. After following up several times, Keane received a response from Prizant on May 26, 2021, stating that the position was no longer open. Inter Miami hired Craig Dalrymple, a white, British coach, to fill the position.

### III. Las Vegas Soccer, LLC

Hill alleges that Las Vegas Soccer, LLC ("Las Vegas") owns the men's professional team known as Las Vegas Lights FC. Las Vegas is a limited liability company formed in Nevada. Las Vegas's principal place of business is also located in Nevada. Las Vegas Lights FC is a member of the USL.

In September of 2017, knowing that the Las Vegas Lights were preparing for an upcoming season, Hill asked his close friend to reach out to the club on his behalf and express Hill's interest in a head coach position. Hill never received a response. In December 2020, knowing that the positions for head coach and technical director were vacant, Hill called Brett Lashbrook, Las Vegas's general manager, regarding a coaching position. Lashbrook did not respond.

On January 25, 2021, Keane visited Las Vegas and sent emails, texts, and voicemails to Lashbrook asking for an opportunity to meet with him and discuss the then-open positions.

Keane never received a response. On March 10, 2021, Las Vegas hired Steve Cherundolo, a white, former US and international soccer player, as its head coach.

### IV. Memphis 901 FC, LLC

Hill alleges that Defendant Memphis 901 FC, LLC ("Memphis 901") owns the men's professional team known as Memphis 901 FC. Memphis 901 is a limited liability company formed in Tennessee. Its principal place of business is also located in Tennessee. Memphis 901 FC is a member of the USL.

On March 5, 2018, Keane, on Hill's behalf, reached out to Memphis 901 FC's owner to be considered for the then-open head coach position. Keane never received a response.

On January 28, 2021, Keane reached out to Memphis 901's Assistant Sporting Director, James Roeling, seeking consideration for the then-open head coach position after the prior head coach was terminated. Roeling responded that they were not looking for other applicants at that time. Memphis 901 filled the position with Ben Pirmann, the previously interim head coach. Pirmann is white.

### V. Prodigal Soccer, LLC

Hill alleges that Defendant Prodigal Soccer, LLC ("Prodigal") owns the men's professional team known as OKC Energy FC. Prodigal is a limited liability company formed in Oklahoma with its principal place of business also located in Oklahoma. OKC Energy FC is a member of the USL.

On April 8, 2019, Keane reached out on Hill's behalf to OKC Energy's general manager regarding the team's head coach position. Keane received no response. On November 22, 2019, OKC Energy announced John Pascarella, who is white, as their new head coach.

After Pascarella left, Keane again reached out to OKC Energy about the vacant head coach position. He received a response that the position was still open and that his information was forwarded to the COO. Hill did not receive any further responses. In June 2021, the OKC Energy announced Leigh Veidman as their interim head coach, later promoted to the permanent head coaching position.

## VI. Tepper Sports & Entertainment

Hill alleges that Defendant Tepper Sports & Entertainment ("Tepper") owns the men's professional team known as Charlotte FC. Tepper is a limited liability company organized under the laws of Delaware with its principal place of business in North Carolina. Charlotte FC is a member of MLS.

In June and July of 2021, Keane contacted numerous persons within the Charlotte FC organization seeking to have Hill's resume reviewed for the then-vacant head coaching position. Keane never received a response. On July 7, 2021, Charlotte FC announced Miguel Ramirez as their head coach.

## VII. Major League Soccer, LLC and United Soccer Leagues, LLC

With respect to MSL and the USL, Hill does not allege that he applied for any positions with these organizations. Instead, Hill alleges that black coaches are severely underrepresented in both leagues. He further alleges that that both leagues are aware of internationally acclaimed applicants for head coaching positions of their member teams and that neither had a policy in place to ensure compliance with federal anti-discrimination laws in the hiring of head coaches for member teams. Hill contends that MLS and USL gave their tacit approval of the discriminatory practices alleged in the complaint.

## Discussion

Defendants argue various grounds for dismissal of this case. Defendants Atlanta United, Inter Miami, Las Vegas, Memphis 901, Prodigal, and Tepper (hereafter the "Club Defendants") argue, among other things, that the claims against them should be dismissed for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Similarly, MLS argues that the claims against it should be dismissed because venue is improper under Rule 12(b)(3) and for failure to state a claim under Rule 12(b)(6). MLS also argues, in the alternative, that it was improperly joined under Rule 20 and that the claims against it should be severed and transferred to the Southern District of New York. Likewise, USL argues that the claims against it should be dismissed under Rule 12(b)(6) because the allegations are impermissibly vague, fail to allege that USL is an "employer" under the IHRA, Hill failed to exhaust his administrative remedies under the IHRA, and some claims are time-barred.

Because the Court agrees that it lacks personal jurisdiction over the Club Defendants, those motions are granted. The Court need not consider the Club Defendants' other arguments. Also, the Court grants MLS and USL's motions for the reasons explained below.

### I.     Illinois Human Rights Act Claim

Defendants move to dismiss Hill's Illinois Human Rights Act Claim arguing that Hill does not allege that they are an "employer" under the act and did not exhaust his administrative remedies. In response, Hill agrees to withdraw this claim. Accordingly, the Court dismisses Count 2 of the complaint.

### II.    Personal Jurisdiction

The Club Defendants argue that the Court lacks personal jurisdiction over them, and, therefore, the Court should dismiss Hill's complaint under Fed. R. Civ. P. 12(b)(2). When a

defendant makes such a motion, the plaintiff bears the burden of demonstrating personal jurisdiction over the defendant. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Parties may submit affidavits in support of their arguments, and after a defendant submits evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction. *Id.* at 783.

Where a court rules on a Rule 12(b)(2) motion based on the submission of written materials, plaintiff must make out a prima facie case of personal jurisdiction. *Id.*; *see Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000) ("At a minimum, the plaintiff must establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted."). The Court takes the plaintiff's asserted facts as true and resolves any factual disputes in its favor. *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423-24 (7th Cir. 2010).

Because neither Title VII nor §1981 authorize nationwide service of process, 42 U.S.C. §§ 1981, 2000e-5(f)(3), the Court looks to Illinois's long-arm statute to determine whether Defendants are subject to personal jurisdiction in Illinois. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). The Illinois long-arm statute permits the Court to exercise personal jurisdiction "on any…basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2–209(c); *see Northern Grain Marketing, LLC v. Gerving*, 743 F.3d 487, 491-92 (7th Cir. 2014). Because the Seventh Circuit finds no operative difference between the two standards, the Court limits its analysis to whether exercising jurisdiction over Defendant comports with the Due Process Clause. *Illinois v. Hemi Group LLC*, 622 F.3d 754, 756-57 (7th Cir. 2010).

Thus, the question before the Court is whether Defendants have "sufficient 'minimum contacts' with Illinois such that the maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *Tamburo*, 601 F.3d at 700-01 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). Put differently, each defendant must have purposely established minimum contacts with the forum state so that it should reasonably anticipate being called into court there. *Id.* at 701. In conducting the "minimum contacts" analysis, the Court must focus on "contacts that the defendant himself creates with the forum State," not the contacts between the forum and the plaintiff. *Walden v. Fiore*, 571 U.S. 277, 134 S. Ct. 1115, 1122, 188 L.Ed.2d 12 (2014) (internal quotation marks and emphasis omitted).

### A. General Jurisdiction

Personal jurisdiction can be general or specific. A court has general jurisdiction over a defendant only if he has continuous and systematic connections to the forum state. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). General jurisdiction means that the defendant is so "at home" in the forum state that he can be sued there for anything, even a claim that has no nexus to the state at all. *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L.Ed.2d 796 (2011). This is a demanding standard. *uBID*, 623 F.3d at 426.

The Club Defendants argue that the Court lacks general jurisdiction over them. None of these Defendants are incorporated in or have their principal place of business in Illinois, and Hill doesn't dispute these facts. Nevertheless, Hill contends that these Defendants maintain such continuous and substantial business relationships and activities directed at Illinois that the exercise of general jurisdiction over them comports with the constitutional requirements.

8

The Court finds that Hill fails to meet his burden to establish a prima facie case of general personal jurisdiction over the Club Defendants. First, he gives conclusory and vague reasoning as to why general jurisdiction exists—merely stating that "as set forth the FACTS above and in Exhibit A to the Shebar Declaration, each Defendant maintains continuous and substantial business relationships and activities directed at Illinois[.]" Ptlf's Response, ECF No. 74, at pg. 12. But Hill fails to offer any meaningful detail as to what those relationships and activities are. "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). And it is not the Court's job to sift through the record and make the case for a party. *DeSilva v. DiLeonardi*, 181 F.3d 865, 867 (7th Cir. 1999) ("A brief must make all arguments accessible to the judges, rather than ask them to play archaeologist with the record."). Dismissal for this reason alone would be sufficient.

Second, even looking at some of his purported evidence, Hill's allegations fall well short of the high standard for establishing general jurisdiction over the Club Defendants in this district. *See Kipp v. Ski Enterprise Corp., of Wisc., Inc.,* 783 F.3d 695, 698 (7th Cir. 2015) (noting that general jurisdiction "should not lightly be found"). He points to allegations that the defendants offer merchandise for sale to Illinois residents, make job postings available to Illinois residents, recruit or borrow soccer players from the Chicago Fire (an MLS team), play games against the Chicago Fire, and have relationships with third parties located in Illinois. None of these facts are sufficient to establish general jurisdiction over the Club Defendants.

Hill makes allegations concerning the Club Defendants' activities in Illinois, but, as Supreme Court precedent teaches us, general jurisdiction "calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide." *Daimler*, 571 U.S. at 139 n.20. What's more, with respect to sales of merchandise in Illinois, the Supreme Court explains

9

that the fact that "a corporation 'engages in a substantial, continuous, and systematic course of business'" is not enough to support the exercise of general jurisdiction. *Id.* at 138 ("That formulation, we hold, is unacceptably grasping."). Hill does not provide any evidence regarding the Club Defendants' global sales. To the contrary, he only has provided evidence that the Club Defendants maintain a public website, which is insufficient to establish general jurisdiction. *See Tamburo*, 601 F.3d at 701 ("Each of the individual defendants maintains a public website obviously accessible by Illinois residents, but as we have noted, that is not enough to establish general personal jurisdiction"); *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014).

Hill's other allegations fail for similar reasons. Sporadically borrowing players from Illinois teams or recruiting players who were born or reside in Illinois is not enough to meet the general jurisdiction standard. *See Tamburo*, 601 F.3d at 701-02 (holding that sporadic contacts with Illinois were not enough to establish general personal jurisdiction). So too with making employment offers generally available to Illinois residents. Hill does not provide evidence that these opportunities were specifically targeted to Illinois residents rather than to the general public. And as for contractual or other relationships with third parties, that is not enough to establish general jurisdiction. *See Walden v. Fiore*, 571 U.S. 277, 286 (2014) ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State.") (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

Hill's contentions also suffer from another problem: he fails to provide competent proof upon which the Court can rely. In his response, Hill's attorney provides a declaration containing

a list of each Defendants' supposed contacts with Illinois. This lists comprises links to various websites, online articles, and press releases. But without an affidavit or declaration providing the requisite indicia of reliability pursuant to Fed. R. Evid. 201(b)(1) and 201(b)(2), the Court cannot accurately and readily determine the accuracy of these exhibits. Moreover, because the internet contains many sources with varying levels of reliability, the Court is not required, nor inclined, to take judicial notice of Hill's exhibits based solely on the evidence before it. *See Hill v. Capital One Bank (USA), N.A.*, Case No. 14-cv-6236, 2015 WL 468878, at *6-7 (N.D. Ill. Feb. 3, 2015) (refusing to take judicial notice on unverified internet materials). In sum, Hill fails to carry his burden as to the exercise of general jurisdiction.

### B. Specific Jurisdiction

Having found that general jurisdiction is lacking, the Court turns to whether it can exercise specific jurisdiction over the Club Defendants. A court has specific jurisdiction over a defendant when his contacts with the forum state "directly relate to the challenged conduct or transaction." *Tamburo*, 601 F.3d at 702. "Specific personal jurisdiction is appropriate where (1) the defendant has…purposefully availed himself of the privilege of conducting business in [the forum] state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Id.* Furthermore, the Court's exercise of specific personal jurisdiction must also comply with "traditional notions of fair play and substantial justice" under the Due Process Clause. *Id.*; *see also Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012).

The key is that the "defendant's suit-related conduct must create a substantial connection with the forum State." *Advanced Tactical*, 751 F.3d at 801 (quoting *Walden*, 571 U.S. at 284) (emphasis in original). To wit, the relationship between the defendant and the forum "must arise out of contacts that the defendant himself creates with the forum." *Id.* (quoting *Walden*, 571 U.S.

11

at 277) (cleaned up). A plaintiff must allege "injury and 'something more' directed at the state before jurisdiction over a foreign defendant may be considered proper." *Tamburo*, 601 F.3d at 706 (emphasis in original).

Hills has not met his burden of showing that the alleged controversy arose out of the Club Defendants' forum related contacts. He argues that specific jurisdiction is proper because each of the Club Defendants committed the tortious act of discrimination in Illinois, relying on 735 ILCS 5/2-209(c). But this argument faces two problems.

First, the alleged discriminatory conduct occurred in the respective states where the employment decisions were made—not in Illinois where Hill resides. Hill argues, albeit in response to MLS's improper venue argument, that the unlawful employment conduct took place in Illinois because he felt the effects of that conduct in Illinois. But Hill reached out, unsolicited, to these teams for jobs that would have required him to live and work in the states where those teams were located. He never, for instance, worked for any of the Club Defendants in Illinois and would not have worked for them in Illinois had he been hired. The mere fact that Defendants' conduct affected Hill, who has connections to the forum State, does not suffice to authorize jurisdiction. *See Advanced Tactical*, 751 F.3d at 802.

Second, regardless of where the unlawful conduct occurred, the Court must still analyze whether the exercise of jurisdiction comports with due process. *Tamburo*, 601 F.3d at 702. Relevant factors in this analysis include the inconvenience to the defendant, the "forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and "the shared interest of the several States in furthering fundamental substantive social policies." *Id.*

12

None of these factors support the exercise of jurisdiction in this district. Again, Hill reached out to these teams about the possibility of employment in their respective states—they did not seek him out. When the only link a defendant has to the forum state is a plaintiff who sought out the defendant, personal jurisdiction does not exist. *See Eiler v. S. Dakota Hum Servs. Ctr.*, 736 F. App'x 145, 147 (7th Cir. 2018). Accordingly, the Court finds that exercising personal jurisdiction over the Club Defendants in Illinois does not comport with constitutional traditional notions for fair play and substantial justice.

### III. Jurisdictional Discovery

Hill requests, in the event that the Court finds personal jurisdiction lacking, that he be allowed to conduct jurisdictional discovery as to the following subjects: "(i) business and financial contracts, connections and dealings with Illinois citizens or entities; (ii) relationships with and activities involving their governing body, U.S. Soccer; (iii) relationships with their respective league co-Defendants (both of whom are subject to personal jurisdiction in Illinois), including financial relationships, allocation of revenues, corporate formalities; (iv) recruitment of players and other personnel in Illinois; and (v) merchandising and marketing activities directed to Illinois." Pltf's Response, ECF No. 74, at pg. 13.

A plaintiff must establish a colorable showing of personal jurisdiction before a court permits jurisdictional discovery. *Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000) ("*Reimer*"). Although this is a low bar, a court should deny a plaintiff's request if it's based on only unsupported assertions of personal jurisdiction or appears frivolous. *Id.* (citing *Andersen v. Sportmart, Inc.*, 179 F.R.D. 236, 242 (N.D. Ind. 1998)); *see also Medline Indus., Inc. v. Diversey, Inc.*, No. 20-cv-4424, 2020 WL 5763637, at *4-5 (N.D. Ill. Sept. 28, 2020). It is well established that "a district court does

13

not abuse its discretion in denying additional discovery where the request [is] based on nothing more than mere speculation and would amount to a fishing expedition." *Helping Hand Caregivers, Ltd. v. Darden Restaurants, Inc.*, 900 F.3d 884, 890 (7th Cir. 2018) (internal quotations omitted).

Hill has not put forth a colorable argument that jurisdiction exists and has done nothing to rebut the evidence provided by the Club Defendants regarding their contacts with Illinois. Moreover, some of the topics for which Hill seeks discovery are overly broad and unrelated to whether the Court has personal jurisdiction over the Defendants. Accordingly, the request is denied.

### IV. Major League Soccer

MLS argues that venue is improper and that Hill's claims against it should be dismissed under Fed. R. Civ. P. 12(b)(3). Hill sues MLS under Title VII, which forbids employers from discriminating based on race, color, religion, sex, or national origin. *Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018) (citing 42 U.S.C. § 2000e-2(a)). He also brings a claim under 42 U.S.C. 1981, but the same analysis applies to his Title VII and Section 1981 claims premised on race discrimination. *Smith v. Chi. Transit Auth.*, 806 F.3d 900, 904 (7th Cir. 2015) ("The legal analysis for discrimination claims under Title VII and § 1981 is identical[.]").

Title VII contains its own venue provision, 42 U.S.C. § 2000e–5(f)(3), which "is not simply a supplement to 28 U.S.C. § 1391; it is the exclusive venue provision for all Title VII… actions." *Nathan v. Morgan Stanley Renewable Dev. Fund, LLC*, No. 11 C 2231, 2012 WL 1886440, at *11 (N.D. Ill. May 22, 2012) (quoting *Gwin v. Reynolds & Reynolds Co.*, Case No. 01-cv-770, 2001 WL 775969, at *1 (N.D. Ill. Jul. 10, 2001)). As such, "venue is determined

pursuant to the statute's exclusive venue provision without consideration of 28 U.S.C. § 1391." *Powell v. Sparrow Hosp.*, No. 09 C 3239, 2010 WL 582667, at *2 (N.D. Ill. Feb. 12, 2010).

Under this provision, venue is proper: (1) in any judicial district in the state in which the unlawful employment practice is alleged to have been committed; (2) in the judicial district in which the employment records relevant to such practice are maintained and administered; or (3) in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice. 42 U.S.C. § 2000e–5(f)(3). Hill need only satisfy one of these requirements to demonstrate that venue is proper in the Northern District of Illinois. *Nathan*, 2012 WL 1886440, at *11. He argues that venue is proper because the unlawful employment practice was committed in this judicial district.

Because the Court agrees that venue is improper, it need not consider MLS's other arguments. First, Hill does not allege that MLS engaged in any unlawful employment practices in any district, let alone this one. At best, he alleges that MLS knew about its member clubs' discriminatory practices and did not have policies in place about member teams complying with federal anti-discrimination laws. But Hill does not allege that MLS had any control over these clubs with respect to hiring decisions and further does not allege that MLS or any MLS employee participated in any decisions with respect to his non-hiring.

Second, even if MLS committed an unlawful employment practice vis-à-vis its member clubs, those practices did not occur in this district. As explained above, the hiring decisions were made in the states where each member club is located and thus the alleged unlawful employment practice would have occurred there. *See Moore v. City of Kankakee*, Case No. 14-cv-5440, 2015 WL 2455116, at *2 (N.D Ill. May 22, 2015); *Gwin*, 2001 WL 775969, at *2; *Cox v. Nat'l*

*Football League*, Case No. 97-cv-3741, 1997 WL 619839 (N.D. Ill. Sept. 29, 1997); *see also Hayes v. RCA Serv. Co.*, 546 F. Supp. 661, 664 (D.D.C. 1982).

The cases Hill cites—*Wahba v. Kellogg Co.*, Case No. 12-cv-6975, 2013 WL 1611346 (N.D. Ill. April 12, 2013) and *Williams v. American College of Education, Inc.*, Case No. 16-cv-11746, 2017 WL 2424227 (N.D. Ill. June 5, 2017)—do not hold otherwise. In *Wahba*, the district court held that the alleged unlawful employment practice did not occur in the Northern District of Illinois even though the plaintiff resided in that district and received a telephone interview while he was within the district. 2013 WL 1611346, at *2. The court noted the interview process only ended, and an employment decision rendered, after a face-to-face interview in the Western District of Michigan. *Id.* The employment practice, therefore, took place in the Western District of Michigan. *Id.*

Similarly, in *Williams*, the Court held that the situs of material events related to the unlawful employment practice occurred where the plaintiff felt the effects of those decisions—*i.e.*, where he lived and worked. 2017 WL 2424227, at *6. But Hill did not work for any of the Club Defendants. His situation, therefore, is not analogous to *Williams*, in which the plaintiff was already employed by the defendant when he brought his unlawful employment practices lawsuit. Rather, Hill sent unsolicited inquiries to the Club Defendants for jobs located outside of Illinois.

Hill's interpretation of Title VII's venue provision stretches it far beyond its intended reach. Accordingly, because the Court concludes that the alleged discriminatory conduct did not occur in this district, MLS's motion under Fed. R. Civ. P. 12(b)(3) is granted.

Because it has been established that this district is not the proper venue for this case, the Court can either dismiss the action, or "if it be in the interest of justice," transfer it to a proper district. 28 U.S.C. § 1406(a). Where a complaint is timely filed and later dismissed, the timely

filing of the complaint does not toll or suspend the 90-day limitations period. *See Sabay v. Reno*, Case No. 95-cv-2325, 1996 WL 167332 at *3 (citing *Minnette v. Time Warner*, 997 F.2d 1023, 1027 (2nd Cir. 1993)). Because more than 90 days have passed since Hill received his EEOC right to sue letter, the interests of justice are best served by transferring the case. *See, e.g.*, *Gwin*, 2001 WL 775969, at *2 n.3. And since venue in the Southern District of New York is proper for the claims against MLS, which are the only remaining claims, the Court transfers this case to that court. Given that the Court has decided to transfer this case, it need not reach MLS's 12(b)(6) arguments.

## V.     United Soccer League

Hill also brings Title VII and Section 1981 claims against USL. USL argues that Hill's claims against it should be dismissed because his allegations are too vague and thus fail to state a claim under Fed. R. Civ. P. 12(b)(6). The Court agrees. Hill does not allege that he applied for a job with the USL. Instead, as he did with MLS, he alleges that USL did not have a policy in place to prevent discriminatory conduct among league members and that the USL tacitly, if not explicitly, approved of its members discriminatory hiring practices. Importantly, Hill alleges no facts from which it could reasonably be inferred that USL was responsible for its members' hiring practices. *See IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 540 (7th Cir. 1998) ("Parents of wholly owned subsidiaries necessarily control, direct, and supervise the subsidiaries to some extent, but unless there is a basis for piercing the corporate veil and thus attributing the subsidiaries' torts to the parent, the parent is not liable for those torts…"); *see also Dixon v. CMS of the State of Illinois*, Case No. 14-cv-4986, 2016 WL 4158926, at *2 (N.D. Ill. Aug. 5, 2016). Rather, Hill's allegations consist of conclusory and vague statements. Without

anything more concrete regarding the USL's ability to influence these hiring decision, Hill's claim must fail.

## Conclusion

The Court grants Defendants' motions to dismiss [19] [38] [46] [48] [50] [54] [61] [64]. The claims against Defendants Atlanta United, Inter Miami, Las Vegas, Memphis 901, Prodigal, Tepper, and the USL are dismissed without prejudice. This case is transferred to the Southern District of New York. Plaintiff's request for jurisdictional discovery is denied.

SO ORDERED.                                    ENTERED: February 16, 2023

_____
**HON. JORGE ALONSO**
**United States District Judge**